May it please the Court, Counsel, Cody Elliott, representing Portland Public Schools, and the individual defendants, Roberta Cooper and Patrick Allen. I'd like to reserve five minutes of my time for rebuttal, if I may. This case presents the question whether two public school employees can be held personally liable for violating the equal protection rights of an intern when there's no precedent that clearly establishes the contours of an intern's equal protection rights, such that employees would have noticed that their actions could amount to a constitutional violation. The trial court here determined that Ms. Cooper and Ms. Callen could be held personally liable for violating Ms. Vejo's equal protection rights, but in doing so it ignored this Court's and the United States Supreme Court's decisions on qualified immunity. And those decisions tell us a few things. First, the decisions tell us that courts and parties cannot frame constitutional rights in terms of broad constitutional principles cast at a very high level of generality. Those rights must be framed in reference to those precedents. Those precedents also tell us that public employees are entitled to qualified immunity if none of the Court's existing precedents squarely governs the facts, such that only somebody plainly incompetent or who knowingly violates the law could act as they did. So in this case, the trial court improperly framed Ms. Vejo's rights in terms of broad constitutional rights cast at a very high level of generality, essentially that you can't end an internship on the basis of the intern's race, national origin, or religion. Let me ask you this. So there are two steps to the qualified immunity analysis. The first step, we ask, taking all these facts as true, a reasonable finder of fact could conclude that the plaintiff's constitutional rights were violated, right? Right. Whether the plaintiff's equal protection rights were violated by these two defendants. Correct. That's the first step. We ask that, okay? And if the answer to that question is yes, then you ask, is the right clearly established? And then as you say, we're supposed to not define that right at such a broad level, but look at the contours of the claim. But let me ask you this. If you take all the facts as true here, you know, resolving any disputes, does the plaintiff state an equal protection claim? No, she does not. Why not? And I guess stepping back just for a moment, that analysis is correct. It's really almost three stages. It's whether there's a constitutional right, whether that right was clearly established beyond debate, and whether that right was, in fact, violated. Again, construing facts most favorably to the claimant. And those factors can be analyzed in any order. But we usually ask whether or not you take the facts as true, because you're up here on a collateral review. You're up here on qualified immunity, and that's why the only issue at stake is the equal protection claim. And so I'm just asking you, because if you take the facts as true, and they fail to state a claim that no reasonable fact finder could ever agree that there was a violation, and that's it. The case is over. The case should have been, qualified immunity should have been granted, or summary judgment should have been granted on the constitutional violation. I ask you, is there a violation here? And there's not, because when you step back from that broad, high level of generality. Forget that. Just tell me, why isn't there a constitutional violation? Because when you look at what the right is, you have to frame it in the context of the case. And here the right would be something like, whether a public employee violates a Christian Russian intern's equal protection rights by ending her internship after the intern asked questions. Well, she says, I was terminated because they based their decision on the fact that I was Russian and a Christian, an orthodox Christian. Right. And that's not what the objective facts of this case demonstrate. Why not? That's what I'm getting at. Because that is saying qualified immunity must be denied. I'm sorry. Why isn't there evidence here that shows that that's what happened? There's evidence, the evidence in the record that the trial court found. The one piece of evidence relating to this is that the internship was ended after Ms. Cooper made a statement about how Russians or the Russian government was being judgmental. Correct. So there's no statement. So there's no evidence that, for example, that we have to end this internship because your Christian views don't fit here, or we have to end this internship because we just can't have Russian interns here. If those were the objective facts of the case, then we would say, OK, is there precedent on the books that clearly establishes that intern's right? And does this fall within one of those cases? It's kind of a funny case in the sense that it's a 1983 case. It's not a Title VII case. And do you think that's jurisprudence about stray remarks and other things are implicated here? I think that the case law and it's the cases aren't right in front of me. I do believe Title VII jurisprudence factors into equal protection claims to some degree. You're absolutely correct that this and it's important to recognize that because we are talking a Section 1983 claim versus a Title VII claim, Title VII claim, there's no qualified immunity implicated. We're talking a constitutional violation and whether these public employees can be held individually liable. So as to your specific question, whether the Title VII jurisprudence could factor in, I would say, sure. On that point, I'm trying to figure out then the facts because let's focus on the Russia issue. You're right if someone said we don't have Russian interns or we don't like people from Russia, that would be a national origin, at least a prima facie case. But what happened here, as I understand, is there's this discussion and it's Cooper, not the principal, correct? Correct. Yeah, Ms. Cooper and Ms. Vail were the ones having the conversation, correct. And so they're talking about Russian judgments vis-a-vis the Olympics, is that right? Correct. Absolutely. And then Ms. Vail, is it Vail? I believe it's Vail. Vail, okay. Ms. Vail then says, well, that's not the people, that's the government. And then Ms. Cooper mostly says, yeah, you're right about that, it's the government. So is there any other evidence on Russia? No, not in the record, Your Honor. And that's the thing too, again, important to recognize this qualified immunity analysis and why context matters. Because if you had, for example, a situation where a public employee who's like an electrician or a plumber having a discussion about Russia and the Russian Olympics, that may seem strange. But in the context of a counseling internship where, and as the evidence reflects, the testimony of Roberta Cooper, part of the job of the mentor is to explore the role of bias and implicit bias and where people are coming from as it relates to students. And so whereas a conversation about whether the Russian government is judgmental with respect to its decision about banning gay athletes from the Olympics may be out of context or strange in certain contexts, not strange at all in this context. And so as to your point, Your Honor, I don't know that, I mean, certainly a reasonable fact finder may determine that. But then that gets you to that next step, which is where's the case? Let me just, Judge McEwen represented their comment about Russia. But the other basis for her claim is that she was Christian. Correct. Or orthodox Christian. Correct. Now, was there any evidence in the record that these two individuals in any way raised the issue of her religion? I believe, and during my time when counsel's up here, I'll look in the record. I believe that Ms. Vejo had made a comment to another counselor, something to the extent of, I'm Christian and I have Christian values, where does my identity fit in here? Obviously, that's a disputed fact, whether she said that or not. But again, assuming that that's true, we always get back to, okay, where's the case? Where's the case that says when an intern says, I'm Christian and I have Christian values, and then her internship has ended later, where does that case exist that say that can violate an equal protection right? Well, you have to have a causation. You have to have some evidence that that's the basis. You can't just say a statement and then I'm terminated, therefore I'm terminated. Is there any linkage here in time? What's the temporal? The temporal, and I see I'm getting into my rebuttal time, but briefly, it's a very compressed timeline. This was about six to eight weeks into her internship because the ending of the internship was around October 2013, and the semester or the term started in September. And there were a few weeks that were actually missed by Ms. Vejo due to illness, et cetera. So it was a very brief amount of time when all of these concerns came to the forefront and they were addressed. Do you want to save your remaining time? Time for rebuttal. Thank you. Good morning. May it please the Court, I'm Herb Gray appearing on behalf of Margarita Vejo, who is the plaintiff below. It's Ms. Vejo's position that the trial court properly denied summary judgment on qualified immunity because there were a number of disputes of material fact and the court has already referenced those. And I would urge that the questions before the court. Well, wait. When you're up here, though, we ask. We are dealing with qualified immunity, and for our purposes it's a legal issue, so we assume that all the facts are true that you've alleged. And they must be viewed in the light most favorable to you. And then we ask, as I said, we ask, does that establish, could a reasonable fact finder find that her equal protection rights were violated? And the district court said yes. Correct. And then the district court said also a public employee in this position would obviously know that they can't discriminate on the basis of religion or national origin and said you don't get qualified immunity. But my question, though, is even if you assume the facts, just to follow up on this discussion that we had with the district's counsel or the defendant's counsel, even if you assume all the facts are true, what are the facts that show that her religion or national origin was the cause or was the basis or was the motivation for terminating her as an intern? Well, what appears in the record, Your Honor, is that she generally got very high marks. She was hired initially because of her Russian background and the fact that she had a lot of experience tutoring students. During the early course of her internship, she was told repeatedly she was doing a good job, but that's what's reported to the supervisors in the graduate program. So until these questions came up where she started asking questions about her Christian values and her Christian identity and how do those fit in, that's when the wheels started to come off the wagon. And the record reflects that all of that happened in a fairly compressed period of time after she had generally been told that she was doing a great job. So it was only when she began to raise those questions that then what came back to her were questions that we argue are subjective in terms of talking about competencies which are ill-defined. And so the district did not come right out and say, and neither did the two individuals, we're tossing you out of this internship because of your Christian faith or because of your Russian heritage. They found other subjective, ill-defined standards for doing that. And then you get to the second part of qualified immunity. Where is this clearly established? If there are these, as you call them, ill-defined subjective factors, that those can't be used to terminate an employee, what's your best case that that in combination with a remark here and a remark there mean that you don't get qualified immunity? Okay, well, I can address cases. Let me suggest that there's more background than just cases because the law does not require that there actually be a case on point. It just has to be enough indication that everyone knows what the law is. So we know the law as broadly stated that you can't discriminate under equal protection on the basis of, but in a more granular sense, what are the cases that you think we should be looking at here? So I would say that the Ward case from the Sixth Circuit is probably the closest case. The Keaton case from the Eleventh Circuit, I think, is also instructive. Are there any Ninth Circuit cases? Well, the Oyama case, Oyama versus State of Hawaii, University of Hawaii, kind of recited the history of all of the cases. So even though that decision came along later, it was drawing upon cases from across the country and indicating its own. We can't really use a case after the fact, as I know you know, in terms of the clearly established law. Understood. But the Ward case and the Keaton case in particular were on the books. But nothing in the Ninth Circuit. Not anything in the Ninth Circuit. But in addition to what the law says, we have a variety. The record contains a lot of references to the fact that the Portland Public Schools had lots of policies prohibiting discrimination, that standards, ethical standards of the American School Counseling Association had prohibitions on discrimination. The contract between the Portland Public Schools and Lewis and Clark had non-discrimination provisions. Well, those are well and good, but your claim is based on the 14th Amendment. And that's the standard that we apply. I'm not sure what the Court is asking me, so. Well, in following up your answers to Judge McKeown, you know, you're just reciting to us these policy statements as another indication that a reasonable employee would know that they can't discriminate. Well, I just said those policies are fine and good, but we are bound by constitutional principles. Well, I understand that. But, again, my understanding of the law is that there doesn't have to be a specific case on point that says that this is wrong. But I think it's pretty clear from the cases that I've referred to. Let me ask you this. I want to go back just for a moment. What, in your view, were the red flags that suggest that Cooper and the principal terminated Ms. Vajo because of her religion or ethnic origin? Well, the conversation that's been referred to about the Russians judging and whether that included the government, there is some conflict in the evidence about whether religion was discussed at that point. But the record in our brief recites that Ms. Vajo was asking questions of her supervisor because she was in an environment that was surrounded by rainbow flags and a lot of things overtly promoting an LGBT agenda. And she asked, is there room for my Christian values in this place?  And the response was? The response? I'm sorry? The response to that question. Well, that's what I think led to the discussion about Russians judging. I think that was all part of the same conversation. Right. And is there anything else? Is there anything else? That's one. Anything else? That's one. So the court also made reference, excuse me, the excerpt of record at page 38, which is part of the opinion in order, recites the fact that PPS defendants made a unilateral decision to terminate the internship without ever warning plaintiff that possibility was on the table, the fact that plaintiff never had a problematic interaction with a student and raised her concerns in private conversations with PPS staff. Are you saying the school had to wait until there was a problematic interaction with a student before firing an intern? No, they don't. And actually, I believe it's the Oyama case points that out. But what the court here goes on to say is a public school cannot make a decision to terminate a graduate student's internships based on imagined worst-case scenario resting on cultural and religious stereotypes. Well, but in terms of constitutional rights, and she has a contract for unilateral termination, but there's no constitutional right to have a warning or a discussion, correct? Correct. So, I mean, that's where we're in this, I think, second category or the second step in the qualified immunity that interests me, and that is whether it was clearly established that after this kind of interaction, there was something else had to be done. You have to keep her on. You can't terminate her. You have to have a discussion. There doesn't seem to be any case law on that, so that's what I'm searching for. Okay. So let me address what I think is really the linchpin of the whole case, and that is the question whether legitimate pedagogical concerns based on defined professional standards govern or whether there's expressions of personal disapproval or disagreement with Ms. Vail. And if you look at the Axon Flynn case from the Tenth Circuit, their summary judgment was denied on that precise point. The Ward case, there had been a summary judgment rendered against Ms. Ward in that case, and she was a counseling student in a practicum, very similar facts here, and summary judgment was reversed again based on that precise dichotomy. So what is eminently clear is that, first of all, there is authority that has dealt with these questions, and they all kind of go back to Hazel Ward v. Kohlmeier and talking about what constitutes a legitimate pedagogical concern. The problem here is that the authorities require some sort of defined professional standard so that someone knows what those things are. And in this particular situation, what Ms. Vail was confronted with was that she lacked cultural competency and social justice competency. And the record reflects that during the discovery phase of this, leading up to summary judgment, 11 different witnesses were asked what those terms mean, and they all gave 11 different answers. So what we have is subjectivity that is injected here, not by Ms. Vail, but by the school district, and they rely on things that really are standardless for all intents and purposes, and that's used as a smokescreen for engaging in the very discrimination that she is complaining of. Do you have any comparable cases where, because of these standards within the school system, whether these standardless categories, in your view, have been used against her in a discriminatory manner vis-a-vis others? I'm sorry. Can you ask that again? You said that we have these standardless standards. Yes. There's no evidence that there's any comparison between those being used vis-a-vis her versus being used against any other individual, is there? That would be correct on the record before you. Right, and often in an equal protection case, that's how we would look for that kind of evidence, right? Yes. I mean, because you might say, well, look, they never fired anybody ever before on these standardless bases. That might be a fact, but we don't have anything like that. At this point, yes. Again, what's interesting, I think, between what's in the district's brief and what was presented to you this morning is the questions that were put to you in the brief are totally different from the ones that were presented this morning. And, again, I would urge that the questions are really properly the ones that are the elements pertaining to qualified immunity and that the arguments that were made in the district's brief about whether or not Roberta Cooper was a reliable employee that Petra Callan could rely upon, none of that was argued below, and that's not properly before the court. And the other thing is that I believe even though we understand that there's no prior Ninth Circuit precedent that directly controls here, there certainly is authority from around the country, and that together with the other policies take this from the broad level of generality that counsel referred to and boil it down to something where it's very clear everybody knows what the standard is that's expected of them. So if you take all of that evidence, it's eminently clear that the action that was taken was contrary to a pretty well-known and defined standard and that there was explicit evidence to the effect that those rights were violated, or at least to the point where there was a reasonable question that could be presented to a jury on that point. So if the court has no further questions, I'll thank you. We have a little time for rebuttal. I'm going to attempt to hit five points. We'll see if I get to all five. The first is with respect to counsel's statement that there's disputes of fact here. I think correctly the court recognizes that summary judgment is not the standard here. It's not whether there's a dispute of fact. If that were the case, there would rarely be qualified and would never be qualified immunity granted in any case. Counsel's acknowledged that there is no Ninth Circuit precedent that governs the facts here. We've heard a Tenth Circuit case, a Sixth Circuit case, and an Eleventh Circuit case, and then the Oyama case, which was decided in 2015, which is two years after Ms. Veo's internship was ended. None of those precedents, the Sixth, Tenth, or Eleventh Circuits, bind this court. And they're not, when you talk about precedent that squarely governs the facts, those are cases from outside circuits don't fall in that category. With respect to this, counsel's correct. There doesn't have to be a case that involves a counseling intern at Madison High School in Portland, Oregon. We don't have to get absurdly granular with this level of framing the right. But it does have to be a case that squarely governs the facts. And so I think as we're gathering this morning, there is no such case. If there were, I think based on counsel's point that she's an intern and not an employee. That's one of the points, absolutely. Because, and as the lower court addressed, and it's a matter not before the court here, but the district got summary judgment on the First Amendment claims because she's not an employee, she's an intern. And she had state law discrimination claims that were also dismissed because she's not an employee, she's an intern. So absolutely, the fact that an internship is involved is critical. So there would have to be almost a threshold case that says, hey, for purposes of equal protection, interns are like employees and we're going to treat them as such. So that kind of gets you into the door. But then there would also have to be that case, based on counsel's argument, that an intern's asking questions about her values and then being terminated thereafter could constitute an equal protection violation. You take that a little bit too far. I mean, we gave the example before if somebody says, look, I don't like Russians and I don't want any Russian interns, I don't think it would matter if she was an intern or an extern or a volunteer or whatever, right? A parent even. Yeah, I just think that there still has to be that case that governs the facts, squarely governs the facts, that would give the roadmap to these public employees that what they're doing could be a constitutional violation as opposed to a violation of Title VII or something else. The final point, you know, we're talking about how qualified immunity can't be at this broad level. I just want to make clear here that we have two individual defendants, both of whom had different involvement in this matter. Ms. Callan did not have any personal conversations with Ms. Veo where any of these issues were raised. She was relying on information from Ms. Cooper that Ms. Veo said very troubling statements that warranted the end of her internship. So I want to make sure that the Court treats Ms. Callan and Ms. Cooper individually because the facts, there would have to be facts that squarely govern those, each of their involvement in this case for qualified immunity to be denied. And if the Court has no further questions, I can wrap up. Thank you. Thank you very much. Thank you both for the argument this morning. The case just argued of Vejo versus the Portland Public Schools is submitted.
judges: McKeown, Paez, Bashant